TREG R. TAYLOR
ATTORNEY GENERAL

Cheryl Rawls Brooking (Alaska Bar No. 9211069)
Senior Assistant Attorney General
Ronald W. Opsahl (Alaska Bar No. 2108081)
Senior Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: cheryl.brooking@alaska.gov
         ron.opsahl@alaska.gov

*Attorneys for State of Alaska*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA WILDLIFE ALLIANCE, ALASKA WILDERNESS LEAGUE, CENTER FOR BIOLOGICAL DIVERSITY, DEFENDERS OF WILDLIFE, ENVIRONMENT AMERICA, FRIENDS OF THE EARTH, and SIERRA CLUB, | Case No. 3:21-cv-00209-SLG |
| Plaintiffs, | |
| v. | **STATE OF ALASKA'S MOTION TO INTERVENE** |
| U.S. FISH & WILDLIFE SERVICE, UNITED STATES DEPARTMENT OF THE INTERIOR, SHANNON ESTENOZ, in her official capacity as Assistant Secretary for Fish and Wildlife and Parks, and DEBRA HAALAND, in her official capacity as Secretary of the Interior, | |
| Defendants. | |

Pursuant to FRCP 24(a)(2), or alternatively FRCP 24(b), proposed intervenor the State of Alaska (the "State" or "Alaska") or FRCP 24(b), hereby moves this Court for entry of an Order granting Alaska leave to intervene in the instant dispute. Alaska's Motion to Intervene is supported by the Declarations of Douglas Vincent-Lang and Corri Feige, and the Points and Authorities set forth below. Neither Plaintiffs nor Defendants take any position on Alaska's Motion to Intervene. Intervenor-Defendant Alaska Oil and Gas Association does not oppose Alaska's Motion to Intervene.

## INTRODUCTION

The instant action filed by the Alaska Wildlife Alliance, Alaska Wilderness League, Center for Biological Diversity, Defenders of Wildlife, Environment of America, Friends of the Earth, and Sierra Club ("Plaintiffs") challenges the decision by the U.S. Fish and Wildlife Service (the "Service"), to issue an incidental take regulation ("ITR") authorizing the unintentional take of marine mammals under the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361, *et seq.* In particular, the Service issued the ITR allowing applicants to seek Letters of Authorization (LOAs") permitting them to conduct exploration, development and production activities that may cause non-lethal harassment to marine mammal species including polar bears and Pacific walrus in the Beaufort Sea region. Plaintiffs allege the issuance of the ITR and the Biological Opinion (BiOp") violate the MMPA, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*, the Endangered Species Act (the "ESA"), 16 U.S.C. § 1531, *et seq.*, and the Administrative Procedure Act (the "APA"), 5 U.S.C. § 551, *et seq.* Plaintiffs seek declaratory and injunctive relief to void the ITR, NEPA environmental

*Alaska Wildlife Alliance, et al., v. USFWS, et al.*,          Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene                                    Page 2
Case 3:21-cv-00209-SLG-KFR   Document 24   Filed 01/10/22   Page 2 of 21

analysis and finding of no significant impact, and LOAs issued under the ITR, together with an award of Plaintiffs' attorney fees and costs. *See generally* Complaint (ECF 1).

Pursuant to FRCP 24(a) or, in the alternative, FRCP 24(b), Alaska seeks to intervene in this matter to defend the issuance of the ITR, which is of direct, unique, and significant application to the State's interests. Alaska has vital sovereign interests in regulating and managing wildlife and developing natural resources within its jurisdiction. Alaska also has an interest in the welfare of its citizens, including their economic welfare, which is, in part, directly related to development of its oil and gas resources. As detailed below, Alaska receives a direct pecuniary interest from its oil and gas leases and as such, any delay in the development of those leases causes a direct negative impact on Alaska's tax revenues. Alaska's intervention is timely and would not cause prejudice or delay to any party hereto. Further, as explained below, despite having similar goals, the above-captioned Defendants do not adequately represent Alaska's interests. Therefore, the Court should allow Alaska to intervene as a matter of right under FRCP 24(a)(2). Alternatively, if this Court finds Alaska is not entitled to intervene as a matter of right, Alaska should be granted permissive intervention under FRCP 24(b).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. THE BEAUFORT SEA ITR

On June 1, 2021, the Service published its proposed ITR for 2021 to 2026 for the Beaufort Sea ITR Region. 86 Fed. Reg. 29364 (June 1, 2021). Since 1993, ITRs have been issued for the oil and gas industry operations in the region for incidental take of Pacific walrus and polar bear. 86 Fed. Reg. 29365. On August 5, 2021 the Service

*Alaska Wildlife Alliance, et al., v. USFWS, et al.,*      Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene      Page 3

Case 3:21-cv-00209-SLG-KFR      Document 24      Filed 01/10/22      Page 3 of 21

published its final ITR. 86 Fed. Reg. 42982 (August 5, 2021). Subsequently the Service issued LOAs for specific operations and other applications for additional LOAs are in process.  Additional LOAs are expected to be applied for and issued through the term of the ITR ending in 2026.

    **B**    **Alaska's Interests in Instant Action**

Alaska, as a sovereign State and pursuant to its public trust responsibilities, has an interest in managing and conserving all wildlife and natural resources within its jurisdiction, including marine mammals covered by the ITR and their habitat and food sources. Alaska Const. Art. VIII, §§ 1, 4; Alaska Stat. § 16.05.020. As a result, Alaska shares wildlife responsibilities and jurisdiction with the federal government as a matter of Constitutional law, with Alaska having the lead authority absent legislation that provides otherwise. *See, e.g., Kleppe v. New Mexico*, 426 U.S. 529, 545 (1976) (recognizing that states have broad trustee and police powers over wild animals within their jurisdictions unless preempted by federal statute).

Alaska fulfills its management responsibilities through its Departments of Fish and Game, Natural Resources, and Environmental Conservation. (Declaration of Douglas Vincent- Lang p. 5, ¶10); *see generally* Alaska Stat. § 16.05.020(2) ("The commissioner shall***(2) manage, protect, maintain, improve, and extend the fish, game and aquatic plant resources of the state in the interest of the economy and general well-being of the state"). This management scheme necessitates substantial interaction and coordination when there are federal programs, such as the ESA and the MMPA, overlaying State responsibilities. The marine mammals covered by the BiOp, ITR, and LOAs, namely the

polar bear and Pacific walrus, fall squarely within this regulatory scheme. As such, Alaska has a direct interest in the resolution of any litigation concerning the BiOp, ITR, and LOAs and all marine mammals impacted by the same.

Further, in the event the parties engage in any mediation and/or settlement of this dispute, Alaska would be a key participant in negotiating a possible resolution. Any possible solution involving a change in management of the polar bear or Pacific walrus, or other marine mammal species, or development of Alaska's resources, would necessarily require Alaska's participation and approval.

Moreover, as a sovereign state, Alaska has unique interests in any issues arising from or related to the consultation process set forth under 16 U.S.C. § 1536 of the ESA. States have a special voice in ESA decisions, and the ESA is infused with the concept of federal-state cooperation. *See* 16 U.S.C. § 1535(a) (instructing the Secretary to cooperate to the "maximum extent practicable" with the states in carrying out the ESA's policies and purposes). For instance, pursuant to 16 U.S.C. § 1533(i), if "a State agency . . . files comments disagreeing with all or part of the proposed regulation, and the Secretary issues a final regulation which is in conflict with such comments . . . [the Secretary shall] submit to the State agency a written justification for [the] failure to adopt regulations consistent with the agency's comments or petition."

Alaska is also responsible for its citizens' welfare, including their economic welfare. The oil and gas industry is Alaska's largest non-governmental industry, and accounts for 17 percent of private sector jobs and 19 percent of private sector payroll. (Declaration of Feige p. 3, ¶4). Revenue derived from the oil and gas industry in the form

*Alaska Wildlife Alliance, et al., v. USFWS, et al.*,                Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene                                                    Page 5

Case 3:21-cv-00209-SLG-KFR   Document 24   Filed 01/10/22   Page 5 of 21

of taxes, royalties and rentals provided Alaska with an estimated 24% percent of the State's general fund unrestricted revenues for FY 2020. (Declaration of Feige p. 7, ¶17). The State receives a direct pecuniary benefit from leases acquired by the oil and gas industry. (Declaration of Feige on p. 5-7, ¶¶10-18). Further, the 2021 to 2026 Beaufort Sea BiOp, ITR, and LOAs were obtained for purposes of conducting ongoing exploration, development, and production efforts in the region. Unjustified efforts to stop or delay such operations have a direct negative economic impact on Alaska and its citizens in the form of lost employment and tax revenues. As previously noted, Alaska's Constitution imposes a duty on the State to responsibly manage and develop Alaska's natural resources for the maximum benefit of its people. Art. VIII, §§ 1 & 2. Plaintiffs' claims interfere with this duty and set a precedent that may adversely impact future oil and gas exploration, development, and production.

## POINTS AND AUTHORITIES

### A. ALASKA IS ENTITLED TO INTERVENTION AS A MATTER OF RIGHT

Pursuant to FRCP 24(a)(2), a court must, upon timely motion, permit intervention as a matter of right by anyone who:

> "[C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

When analyzing a motion to intervene as a matter of right under FRCP 24(a)(2), the Ninth Circuit applies a four-part test: (1) the motion must be timely; (2) the applicant

*Alaska Wildlife Alliance, et al., v. USFWS, et al.,*          Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene                                          Page 6

Case 3:21-cv-00209-SLG-KFR     Document 24     Filed 01/10/22     Page 6 of 21

must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011); (citing *Sierra Club v. US EPA*, 995 F.2d 1478, 1481 (9th Cir.1993)).

Courts construe FRCP 24(a)(2) liberally in favor of potential intervenors. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). Practical and equitable considerations guide courts in determining whether intervention is appropriate. *Sw. Ctr. For Biological Diversity*, 268 F.3d at 818; *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) ("A liberal policy in favor of intervention serves both efficient resolution of issues and broad access to courts.").

In evaluating a motion to intervene under FRCP 24(a), a court must accept as true the non-conclusory allegations made in support of an intervention motion. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 820. As set forth below, Alaska has satisfied all four elements and as a result, is entitled to intervene as a matter of right.

### 1.    Alaska's Motion is Timely.

The first criterion for intervention of right is timeliness, which itself involves an analyses of three factors: (1) stage of proceedings; (2) prejudice to other parties; and (3) reason for and length of delay, if any. *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319 (9th Cir. 1997). "Mere lapse of time alone is not

Case 3:21-cv-00209-SLG-KFR    Document 24    Filed 01/10/22    Page 21 of 21

determinative." *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). Prejudice to existing parties is the most important timeliness consideration. *Id.*

First, the Motion to Intervene was filed at the outset of these proceedings. As of the date filing, no substantive pleadings, other than the Complaint, Answer, and another motion to intervene, have been filed. Alaska files this Motion to Intervene prior to filing of substantive motions, and intends to fully comply with all schedules and deadlines currently established. As such, this factor weighs in favor of finding that Alaska's Motion to Intervene is timely.

Second, Alaska's participation will not prejudice the other parties. Alaska has attached a proposed Answer to Plaintiffs' Complaint contemporaneously with this Motion to Intervene. Alaska will endeavor to avoid duplication of issues with other parties. Moreover, given the relative infancy of this lawsuit, Alaska's intervention will not cause undue delay or adversely impact any parties' rights in this action. This factor also weighs in favor of finding that Alaska's Motion to Intervene is timely.

Third, the length of delay from the filing of the Complaint in August 2021 and this Motion to Intervene is minimal. Any actual delay reflects the time necessary for Alaska to review the Complaint and assess the necessity of intervention and draft the relevant pleadings in support of the same. No substantive actions have taken place between the original filing of the Complaint and Alaska's Motion to Intervene. Thus, Alaska's Motion to Intervene is timely.

*Alaska Wildlife Alliance, et al., v. USFWS, et al.,*       Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene                                      Page 8
Case 3:21-cv-00209-SLG-KFR    Document 24    Filed 01/10/22    Page 8 of 21

## 2. Alaska Claims a Significantly Protectable Interest in this Action.

The second element for intervention as a matter of right requires that the proposed intervenor demonstrates a "significantly protectable interest" by showing that "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon [its] legally protectable interest." *Sw. Ctr. for Biological* Diversity, 268 F.3d at 818. The Ninth Circuit applies this broad interest criterion to involve "as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (citation omitted); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818. It is generally enough that the interest asserted is protectable under some law, and that there is a relationship between the protected interest and the claims at issue. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818. Here, Alaska has several specific and significantly protectable interests in the subject matter of the instant dispute. As detailed below, these interests, whether viewed individually or collectively, satisfy the second element of the intervention analysis.

First, Alaska has a direct economic interest in the results of the instant dispute. As previously noted, Alaska has an ownership interest in the property subject to the State-issued leases within the regulated area. (Declaration of Corri Feige, p. 6, ¶ 13). Again, the oil and gas industry is a critical aspect of Alaska's economy. *Id.* at p. 3 ¶ 4. In addition to the fact that many Alaskans rely on the industry's activities for employment, the State and its municipalities collect tax and royalty revenues from oil and gas development that are subsequently used to provide services to their citizens. *Id.* at pp. 5-8, ¶¶ 10-19. The amount of revenues Alaska receives is directly tied to the actual

*Alaska Wildlife Alliance, et al., v. USFWS, et al.*,     Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene     Page 9
Case 3:21-cv-00209-SLG-KFR     Document 24     Filed 01/10/22     Page 9 of 21

development of the leased property. For example, Alaska receives royalties from each lease based on production from the lease. *Id.* at p. 7, ¶ 16. The royalties represent the State's share of the production as the mineral interest owner. *Id*. Royalties provided more than $600 million in revenue to the state in FY 2020. *Id*.

State oil and gas lease royalty rates vary depending on the area, but are generally a 1/8th or 1/6th gross royalty on production. *Id.*

This revenue provides for the State's education budget, operating budget and capital budget, and funds local municipalities' assistance programs, capital projects, basic government operations, and education programs. *Id.* at pp. 7-7, ¶¶ 18-19. When leased property is not developed, Alaska receives a significantly reduced revenue stream from its leases (e.g., no royalties, reduced taxes, etc.). *Id.* at p. 8, ¶ 21.

The ITR, and subsequent LOAs issued to applicants under the ITR, are necessary to allow activities to explore and ultimately develop the leased property. Plaintiffs seek to enjoin the BiOp, ITR, and LOAs which, in turn, will ultimately delay the exploration, development, and production of oil and gas in the Beaufort Sea ITR region. Any such delays will have significant adverse impacts on Alaska's economy and its citizens' welfare. By preventing operators from exploring the leased property, Plaintiffs are also preventing development and production of that same property, resulting in the direct pecuniary losses described above.

In addition, a decision in favor of Plaintiffs may result in fewer future lease sales. (Declaration of Feige, p. 8, ¶ 22). In particular, if this Court found in Plaintiffs' favor, the stability and regulatory predictability of Alaska's oil and gas lease program would be

jeopardized. The oil and gas industry makes investments according to a balance of risk and return. An uncertain regulatory environment increases the risk imposed on industry investment in Alaska's oil and gas. *Id.* This increased risk, in turn, will cause oil and gas development investment to go elsewhere where the rewards are greater and the regulatory environment more stable. As a result, a finding in Plaintiffs' favor would have a clear chilling effect on future oil and lease sales, further harming Alaska. *Id.*

Second, Alaska has an interest in the management and regulation of its wildlife and natural resources. Plaintiffs' requested relief impacts the State's sovereign authority in regulating, managing, and conserving all wildlife and other natural resources within its jurisdiction, including the polar bear and Pacific walrus. (Declaration of Douglas Vincent-Lang, pp. 4-5, ¶¶ 10-11). Further, by seeking to vacate the BiOp, ITR, and LOAs, and thereby halting or delaying exploration and development of oil and gas fields in the Beaufort Sea ITR region, Plaintiffs' requested relief frustrates Alaska's constitutional mandate to develop and utilize its natural resources, including its oil and gas leases. *See* Alaska Const. Art. VIII, §§ 1, 2, 4. As a result, any action that adversely impacts Alaska's natural resources necessarily creates a significantly protectable interest.

The Alaska Federal District Court has recently granted intervention by the State in other oil and gas related cases, including 3:20-cv-0204-SLG, ECF No. 67 (ANWR 1002 Area); 3:20-cv-0207-SLG, ECF No. 19 (NPR-A IAP); and 3:20-cv-0290-SLG, ECF No. 96 (Willow Project). Courts have consistently held that rights such as those asserted by Alaska are sufficient to meet the standards required to intervene as a matter of right. *See, e.g., Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924

*Alaska Wildlife Alliance, et al., v. USFWS, et al.*,          Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene                                        Page 11 of 21

Case 3:21-cv-00209-SLG-RFB   Document 24   Filed 01/10/22   Page 11 of 21

(9th Cir.1990) (finding that a City's interests in taxing and regulating contested lands were significantly protectable interests warranting intervention as of right); *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 997-98 (8th Cir.1993) (finding that county's and landowners' property values that could be affected by the outcome of the litigation were protectable interests warranting intervention), *Douglas County v. Babbitt*, 48 F.3d 1495, 1497, 1501 (9th Cir.1995) (holding that a county asserting proprietary environmental interests in lands adjacent to federal land had standing to challenge the Secretary of the Interior's failure to comply with NEPA); *Sierra Club v. Robertson*, 960 F.2d 83-84 (8th Cir.1992) (finding that a State's asserted interests in fish and wildlife, recreational opportunities, and water quality were sufficient to proceed as plaintiff-intervenor challenging the Forest Service's forest management plan). For the aforementioned reasons, Alaska has several significantly protectable interests in this dispute and must be able to fully defend the BiOp, ITR, and LOAs.

### 3. Disposition of this Dispute Would Impair and Impede Alaska's Ability to Protect Its Interests.

A third criterion for intervention as of right is that the action's disposition may, as a practical matter, impair or impede the intervenor's ability to protect the asserted interest. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d at 1177. The question of impairment is not separate from the question of existence of an interest *See, e.g., Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978). In reviewing this prong, courts look to the "'practical consequences' of denying intervention, even where the possibility of future challenge to the regulation

*Alaska Wildlife Alliance, et al., v. USFWS, et al.,*                    Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene                                                Page 12 of 21
Case 3:21-cv-00209-SLG-KFR    Document 24    Filed 01/10/22    Page 12 of 21

[remains] available." *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977). Moreover, this burden is minimal. The Advisory Committee Notes for Rule 24 provide that, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Advisory Committee's Notes, Fed. R. Civ. P. 24 (1966); see also *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir.1995).

Disposition of this action in Plaintiffs' favor would set aside the BiOp, ITR, and LOAs and lead to additional delay in the exploration and development of oil and gas fields in the Beaufort Sea ITR region. In addition to the direct impacts such a result would have on Alaska's management of its wildlife, its natural resources and its economy, as discussed above, disposition of this lawsuit may have far-reaching future consequences to the State. Pursuant to the principles of res judicata, claim preclusion, *stare decisis*, and related doctrines, the effects of the legal and factual determinations made in this litigation may constrain the State's ability to defend similar challenges in parallel or subsequent judicial proceedings or administrative actions. *U.S. ex rel. McGough v. Covington Technologies Co.*, 967 F.2d 1391, 1396 (9th Cir. 1992); *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (finding disposition of lawsuit impaired intervenor's ability to protect its interests regardless of whether intervenor could reverse an unfavorable ruling by bringing a separate lawsuit, noting that "[t]here is no question that the task of reestablishing the status quo if [plaintiffs succeed] in this case will be difficult and burdensome."). For these reasons, Alaska satisfies the impairment requirement.

*Alaska Wildlife Alliance, et al., v. USFWS, et al.*,       Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene                                                    Page 12 of 21
Case 3:21-cv-00209-SLG-RFB   Document 24   Filed 01/10/22   Page 13 of 21

### 4. Alaska's Interests are Not Adequately Represented.

The final criterion is whether the representation of Alaska's interests by existing parties "may be" inadequate. The burden of that showing is minimal. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823. In assessing representation, courts consider (1) whether the present parties' interests are such that they will undoubtedly make all of the intervenor's arguments; (2) whether the present parties are capable and willing to make those arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822. The inquiry should focus on the subject of the action, not just the particular issues before the court at the time of the motion. *Id.* at 823. Where an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. *Id.*

As a preliminary matter, Alaska's interests cannot be adequately represented by Plaintiffs. *See United States v. Stringfellow*, 783 F.2d 821, 828 (9th Cir. 1986) (adverse party cannot adequately represent applicant's interests), *rev'd on other grounds by Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987).

Alaska's interests are also not adequately represented by Defendants, including the Service and the Alaska Oil and Gas Association ("AOGA"). Alaska acknowledges that the ultimate goal of both Alaska and Defendants will be to uphold the LOAs. However, Alaska has a separate and distinct interest in the management, conservation, and regulation of all wildlife and other natural resources within its jurisdiction, including all marine mammals covered by the BiOp, ITR, and LOAs, as well as their habitat and food

*Alaska Wildlife Alliance, et al., v. USFWS, et al.*,                    Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene                                        Page 14 of 21

Case 3:21-cv-00209-SLG-RFB   Document 24   Filed 01/10/22   Page 14 of 21

sources. Alaska Const. Art. VIII, §§ 1, 2, 4; Alaska St. § 16.05.020. Alaska also has a distinct interest in the protection of its citizens' economic welfare which, as previously explained, is directly impacted by the instant challenge to the BiOp, ITR, and LOAs. While the Service may have an interest in particular species within its purview, that interest is distinct from Alaska's broader interest in management of its wildlife and development of its natural resources. Put another way, while the Service may have a focused interest in the polar bear and its habitat, and the validity of the LOAs as they relate to the polar bear, Alaska's interest includes all of its wildlife and natural resources which may be affected by the instant challenge to the BiOp, ITR, and LOAs, any precedent such a challenge may set, and the overall impact such a decision will have on Alaska's economy and its citizens. *See, e.g.*, *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) (finding Arkansas' interest not adequately protected by Plaintiffs because "[t]he State is a government entity, obliged to represent the interests of all of its citizens . . . the State has an interest in protecting and promoting the state economy on behalf of all of its citizens . . . the State has an interest in protecting its tax revenues.").

Similarly, while AOGA may also seek to uphold the LOAs, their interests are focused on the development of oil and gas resources by the private sector. Like the Service's interest specifically in polar bears, the interests of AOGA are narrower than those asserted by Alaska in its wildlife, natural resources, economy, and citizens.

Alaska also has a separate and distinct interest in the development of oil and gas resources in the State, and for the benefit of its citizens, not shared by the other Defendants. The Service, in administration of a nationally applicable statute, could not be

*Alaska Wildlife Alliance, et al., v. USFWS, et al.*,     Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene     Page 15 of 21
Case 3:21-cv-00209-SLG-KFR     Document 24     Filed 01/10/22     Page 15 of 21

expected to adequately represent the State's interest in such resources. *Fund For Animals, Inc. v. Norton,* 322 F.3d 728, 736 (D.C. Cir. 2003) ("[Service's] obligation is to represent the interests of the American people . . . while the [intervenor's] concern is for [its foreign state's] people and natural resources."). Representing both Alaska's unique state interests and the Service's broad national interests is "on its face impossible" and creates a potential conflict of interests that satisfies the minimal burden of showing inadequate representation. *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002).

Likewise, the interest of AOGA in private sector development of oil and gas is also significantly divergent from those of the State. While AOGA has an interest in natural resource development, its interests are narrower, focusing primarily on the impact on private industry. In contrast, Alaska has a constitutional mandate to sustainably develop its natural resources for the benefit of its citizens, thereby comprising a much broader set of interests than those asserted by the private industry groups. *See, e.g., Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) (in holding private applicants' and United States Forest Service's interests sufficiently different, court stated "the government's representation of the public interest may not be identical to the individual parochial interest of a particular group just because both entities occupy the same posture in the litigation.") (internal quotations omitted). In fact, this divergence of focus may result in Alaska and the other Defendants taking different positions on issues associated with jurisdiction, the merits of the case, appropriate remedies and/or settlement proposals.

*Alaska Wildlife Alliance, et al., v. USFWS, et al.*,                    Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene                                                              Page 16 of 21

Case 3:21-cv-00209-SLG-RFR   Document 24   Filed 01/10/22   Page 16 of 21

As a result, it is clear that the other parties to this dispute will not raise Alaska's arguments in defense of the BiOp, ITR, and LOAs, particularly those defenses arising from Alaska's interest in its development of its natural resources, management of its wildlife and protection of its citizens' economic welfare. Likewise, given Alaska's unique role, the other parties to this dispute simply cannot raise all of Alaska's anticipated or potential arguments. In addition, Alaska can offer unique and useful scientific and commercial information regarding the polar bear, its habitat and the impact of delaying issuance of the LOA on Alaska's economy. (Declaration of Douglas Vincent-Lang, pp. 3-4, ¶¶ 7, 9). This information may be critical to the alleged MMPA, ESA, NEPA and APA violations. This information would also be critical to the Court in assessing any possible remedy, should a violation be found to have occurred, particularly if the Court is required to balance the equities in fashioning such a remedy.

The parties' divergent interests will also be felt in matters not directly related to litigation. For example, if the parties engage in any form of settlement and/or mediation, it is likely that a future settlement proposal solely between Plaintiffs and Defendants would not necessarily consider Alaska's interests. As such, it is paramount that Alaska be involved in such discussions to ensure its interests are also considered.

In sum, the State of Alaska satisfies all elements under the FRCP 24(a) requirements and is entitled to intervene as of right. For these reasons, this Court should enter an Order granting Alaska leave to intervene in the instant dispute.

*Alaska Wildlife Alliance, et al., v. USFWS, et al.*,          Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene                                            Page 17 of 21

Case 3:21-cv-00209-SLG-RFB   Document 24   Filed 01/10/22   Page 17 of 21

### 5. The State Has Article III Standing To Participate in This Action.

The State has standing to participate in this action under Article III of the

U.S. Constitution, which requires a litigant to demonstrate that it has "suffered a concrete

and particularized injury that is either actual or imminent, that the injury is fairly

traceable to the defendant, and that it is likely that a favorable decision will redress that

injury." *Massachusetts v. Envtl. Prot. Agency*, 549 U.S. 497, 517 (2007). The Supreme

Court has acknowledged that for purposes of invoking jurisdiction, states are "not normal

litigants," but rather act subject to a "well-founded desire to preserve [their] sovereign

territory." *Id*. at 518–519. Here, the State seeks to intervene in order to collect significant

royalties on the extraction of federal natural resources within the region, among its other

interest. Therefore, the State's "stake in the outcome of this case is sufficiently concrete"

for this Court to confer standing. *Id*. at 519.

### B. ALASKA IS ENTITLED TO PERMISSIVE INTERVENTION

Alternatively, if this Court finds Alaska is not entitled to intervention as a matter

of right, the State of Alaska requests permissive intervention under FRCP 24(b).

Upon timely filing of a motion, a court may permit a party to intervene who "has a claim

or defense that shares with the main action a common question of law or fact."

FRCP 24(b).

In reviewing a permissive motion to intervene, a court shall consider whether

the intervention will unduly delay or prejudice the adjudication of the rights of the

original parties. *Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459,

60 S. Ct. 1044, 1055, 84 L. Ed. 1293 (1940).

*Alaska Wildlife Alliance, et al., v. USFWS, et al.*,          Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene                                    Page 18 of 21

Case 3:21-cv-00209-SLG-RFB   Document 24   Filed 01/10/22   Page 18 of 21

First, Alaska's motion is timely for the reasons presented in Section A.

Second, Alaska also satisfies FRCP 24(b)'s commonality requirement. Under governing Ninth Circuit precedent, applicants meet the requirement for a common question of law or fact when they assert defenses "directly responsive" to the plaintiffs' claims, as Alaska has done here. *See, e.g., Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110-11 (9th Cir. 2002) (intervenor environmental group seeking to defend Forest Service "roadless" rule granted permissive intervention), *rev'd on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). Because the State seeks to defend the challenged federal agency actions, Alaska's defenses have questions of law and fact in common with Plaintiffs' claims and, presumably, Defendants' defenses to the same. As a result, in the event this Court finds Alaska is not entitled to intervention as a matter of right, Alaska nonetheless satisfies the elements for FRCP 24(b). As such, this Court should enter an Order granting Alaska leave to intervene in this lawsuit.

## CONCLUSION

For the reasons set forth above, this Court should grant Alaska's Motion to Intervene as of right under Rule 24(a), or alternatively, permit Alaska to intervene under Rule 24(b).

DATED: January 10, 2022.

TREG R. TAYLOR
ATTORNEY GENERAL

By:     /s/Cheryl Rawls Brooking
      Cheryl Rawls Brooking
      Senior Assistant Attorney General
      Alaska Bar No. 9211069

*Alaska Wildlife Alliance, et al., v. USFWS, et al.*,    Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene    Page 19 of 21

Case 3:21-cv-00209-SLG-RFR   Document 24   Filed 01/10/22   Page 19 of 21

Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Phone: (907) 269-5232
Facsimile: (907) 276-3697
Email: cheryl.brooking@alaska.gov

/s/Ronald W. Opsahl
Ronald W. Opsahl
Senior Assistant Attorney General
Alaska Bar No. 2108081
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Phone: (907) 269-5232
Facsimile: (907) 276-3697
Email: ron.opsahl@alaska.gov

*Attorneys for the State of Alaska*

*Alaska Wildlife Alliance, et al., v. USFWS, et al.,*          Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene                                          Page 20 of 21

Case 3:21-cv-00209-SLG-RFR   Document 24   Filed 01/10/22   Page 20 of 21

## CERTIFICATE OF SERVICE

I certify that on **January 10, 2022**, I filed a true and correct copy of the foregoing document, including all attachments thereto, with the Clerk of the Court of the United States District Court - District of Alaska by using the CM/ECF system. Participants in Case No. 3:21-cv-00209-SLG who are registered CM/ECF users will be served by the CM/ECF system.


/s/Leilani J. Tufaga
Leilani J. Tufaga
Law Office Assistant II

*Alaska Wildlife Alliance, et al., v. USFWS, et al.,*                    Case No.: 3:21-cv-00209-SLG
State of Alaska's Motion to Intervene                                                        Page 21 of 21
Case 3:21-cv-00209-SLG-KFR    Document 24    Filed 01/10/22    Page 21 of 21