Bridget Psarianos (AK Bar No. 1705025)
Brook Brisson (AK Bar No. 0905013)
Joanna Cahoon (AK Bar No. 1405034)
TRUSTEES FOR ALASKA
121 W Fireweed Lane, Suite 105
Anchorage, AK 99503
Phone: (907) 276-4244
Fax: (907) 276-7110
bpsarianos@trustees.org
bbrisson@trustees.org
jcahoon@trustees.org

*Attorneys for Plaintiffs*
*Alaska Wildlife Alliance, Alaska Wilderness League,*
*Defenders of Wildlife, Environment America,*
*and Sierra Club*

Karimah Schoenhut (*pro hac vice*)
SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
50 F St., NW 8th Floor
Washington, DC 20001
Phone: (202) 548-4584
Fax: (202) 547-6009
karimah.schoenhut@sierraclub.org

*Attorney for Plaintiff Sierra Club*

Kristen Monsell (*pro hac vice*)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: (510) 844-7137
Fax: (510) 844-7150
kmonsell@biologicaldiversity.org

*Attorney for Plaintiffs Center for Biological Diversity*
*and Friends of the Earth*

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| ALASKA WILDLIFE ALLIANCE, *et al*., | Case No. 3:21-cv-00209-SLG-KFR |
| Plaintiffs, | |
| v. | |
| U.S. FISH AND WILDLIFE SERVICE, *et al*., | |
| Defendants, | |
| and | |
| ALASKA OIL AND GAS ASSOCIATION, *et al*., | |
| Intervenor-Defendants. | |

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**
(28 U.S.C. § 636(b); Local Magistrate Judge Rule 6)

INTRODUCTION

Plaintiffs Alaska Wildlife Alliance, *et al.*, (collectively AWA) respectfully submit the following objections to the Magistrate Judge's Report and Recommendation Re Motions for Summary Judgment, ECF No. 53 [hereinafter R&R]. Magistrate Judge Reardon issued the R&R, recommending that this Court deny AWA's Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment. This Court's review of the R&R is *de novo* because AWA specifically objects to the R&R's conclusions as to each of their claims. 28 U.S.C. § 636(b); *McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). As such, this Court considers AWA's claims anew. *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009). Rather than rehash previous arguments, AWA's objections include identifying arguments the R&R failed to address or acknowledge, to facilitate consideration by this Court.

OBJECTIONS

I. THE MAGISTRATE ERRED IN UPHOLDING FWS'S SMALL NUMBERS FINDING.

   A. The Magistrate Erred in Determining FWS's Small Numbers Determination Is a Reasonable Interpretation of the MMPA.

The Court should reject the Magistrate's finding that the U.S. Fish and Wildlife Service's (FWS) small numbers determination — which failed to consider the aggregate take over the five-year incidental take regulation (ITR) period — was reasonable. The Magistrate's finding that FWS's segmented approach is a reasonable interpretation of the statute is inconsistent with the Marine Mammal Protection Act's (MMPA) plain language

and its conservation purposes. *See NRDC v. Evans (Evans)*, 364 F. Supp. 2d 1083, 1092 (N.D. Cal. 2003) (explaining MMPA's take prohibition).

First, the Magistrate stated that if Congress intended "to absolutely require such granularity" in FWS's consideration of small numbers, it would have said so. R&R at 14. But the other MMPA provisions the Magistrate cited, that are not at issue in this case, refer to "annual" estimates." *Id.* at 14 n.85. This indicates that if Congress intended to allow FWS to consider only the annual level of take in making a small numbers determination, it would have said so. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987). Instead, the MMPA's plain language for the analysis here directly ties the small numbers determination to the duration of the ITR. *See* 16 U.S.C. § 1371(a)(5)(A)(i) (FWS can authorize "during periods of up to five consecutive years each, the incidental … taking … of small numbers of marine mammals"). Because FWS issued an ITR for a five-year period, it must consider take across all five years in its determination. Pls.' Reply in Supp. of Summ. J. at 11-12, ECF No. 46 [hereinafter AWA Reply]. Moreover, contrary to the Magistrate's finding, section 101(a)(5)(A) is granular — it contains several specific, stringent standards, all of which must be satisfied before FWS can issue an ITR. *See id*. The Magistrate's interpretation ignores that small numbers and negligible impacts are two distinct requirements. *Ctr. for Biological Diversity v. Salazar (Salazar)*, 695 F.3d 893, 903 (9th Cir. 2012).

Second, the Magistrate agreed with Defendants that FWS's approach is "symmetrical," presumably referring to the post hoc argument advanced by Defendants

that their position harmonizes section 101(a)(5)(D) — which are only available for one-year incidental harassment authorizations — with 101(a)(5)(A). R&R at 15; Fed. Defs.' Opp'n Br. at 18, ECF No. 38 [hereinafter Feds.' Br.]. The Magistrate ignored that both provisions only allow FWS to authorize take if the specified activity will take "small numbers of marine mammals," whether "during periods of not more than five consecutive years" or "not more than 1 year," respectively. 16 U.S.C. § 1371(a)(5)(A)(i), (D); AWA Reply at 13. For these two provisions to be harmonious, the MMPA requires that both the small numbers and negligible impact determinations be analyzed across the totality of the period for which FWS is authorizing take.

Third, the Magistrate's agreement that FWS's position avoids a scenario where an entity would apply for five one-year authorizations instead of a five-year ITR, R&R at 15, ignores that this would entail significant effort, including, *inter alia*, public notice and comment requirements. *See* 16 U.S.C. § 1371(a)(5)(A)(i), (D)(iii). More importantly, there would be nothing incongruous about Congress leaving this option available. The separate check provided by the small numbers limitation ensures that there will be a comprehensive analysis of impacts prior to subjecting a population to more take.

Fourth, the Magistrate determined that only considering annual take is consistent with FWS's issuance of annual letters of authorization (LOA). R&R at 15. This ignores that the MMPA does not mention the issuance of LOAs, let alone limit them to one year. AWA Reply at 15. Nor do FWS's regulations limit LOAs to one year. *See id.* Instead, the regulations specify that LOAs must be consistent with the findings made "for the total

taking allowable under the specific regulations," 50 C.F.R. § 18.27(f)(2), indicating FWS must consider small numbers in the aggregate.[1] AWA Reply at 15. Any other reading creates an exception that "swallow[s] the general rule" prohibiting marine mammal take. *Knight v. Comm'r*, 552 U.S. 181, 191 (2008) (citation omitted).

Fifth, the Magistrate relied on FWS's explanation that looking at only the annual level of take is consistent with population estimates based on annual metrics. R&R at 16. But the 2020 population estimate is based on data from 2001 to 2016, not an annual survey. BSITR0002386; AWA Reply at 15.

Sixth, AWA has not challenged FWS's proportional approach, and *Salazar* is inapposite on this point. R&R at 16. In the regulations at issue in *Salazar*, FWS based its small numbers determination on "the total expected takings of … polar bears," 73 Fed. Reg. 33,212 (June 11, 2008); *Salazar*, 695 F.3d at 901 (citing small number determination based on take from all activities). Moreover, the record demonstrates that FWS's small numbers determination did not focus "primarily" on the location of activities relative to the population's range, but on its conclusion only 92 bears would be taken each year. *Contra* R&R at 17; *see* AWA Reply at 10–11 n.8 (citing BSITR0002422, BSITR0002427); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835,

---

[1] AWA focused its arguments on the Southern Beaufort Sea polar bear population because correction of this legal error would not affect the validity of the conclusion that only a small proportion of the Pacific walrus would be harassed (less than 1% over five years). *See* BSITR0002422; *contra* R&R at 15 n.89.

*Alaska Wildlife Alliance v. U.S. Fish and Wildlife Service*
Case No. 3:21-cv-00209-SLG-KFR                                    Page 4

Case 3:21-cv-00209-SLG-KFR   Document 57   Filed 02/21/23   Page 6 of 20

841 (9th Cir. 2003) ("[R]eview of an agency decision is based on the administrative record and the basis for the agency's decision must come from the record").

Accordingly, the Court should reject the Magistrate's R&R and hold that FWS's "small numbers" determination violates the MMPA.[2]

### B. The Magistrate Erred in Finding that FWS's Reliance on Annual Take Was Not a Policy Change.

The Magistrate erred in finding that FWS had not changed its policy regarding use of annual versus total five-year take when making its small numbers finding by dismissing clear statements from the agency. R&R at 17; *see FCC v. Fox Television Stations, Inc. (Fox)*, 556 U.S. 502 (2009). FWS admitted that it used the total five-year take in the Cook Inlet ITR for take of sea otters during oil and gas activities. 84 Fed. Reg. 37,716 (Aug. 1, 2019); Feds.' Br. at 22; *see also* AWA Reply at 17. The Magistrate dismissed this as "a different species in a different location." R&R at 19. But this was a post hoc rationale offered to the court and contradicts the record, which states that the approach was "consistent with applicable law, policy and longstanding practice." BSITR0002428; *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 688 (9th Cir. 2007) (rejecting counsel's post hoc rationalizations for agency action). The Magistrate and FWS offer no support for allowing differing statutory interpretations

---

[2] To the extent the Magistrate based his findings on the fact the FWS used conservative estimates, that determination is also in error. "[T]he MMPA makes it clear that it is authorized take that must be evaluated," *Conservation Council for Haw. v. Nat'l Marine Fisheries Serv.*, 97 F. Supp. 3d 1210, 1221 (D. Haw. 2015), i.e., 443 takes.

based on species or locations. Instead, the Cook Inlet ITR shows that the agency had previously relied on total five-year take to make its small numbers determination but changed that approach here, without satisfying *Fox*.

The Magistrate also erred in its review of other prior ITRs for the take of polar bears. R&R at 17–18. In the 2016–2021 Beaufort Sea ITR, FWS clearly stated that it would make its small numbers determination based on total five-year take: "According to the MMPA, [FWS] shall allow this incidental taking if [it] make[s] findings that the total of such taking for the 5-year regulatory period [w]ill affect only small numbers." BSITR001373–64; *see also* BSITR0013791 (explaining small numbers finding is based on "5-year period of these ITRs"); BSITR0013793 (making small numbers finding based on total take). The Magistrate apparently misinterpreted statements regarding previous take findings to justify ignoring FWS's clear statements that total five-year take must meet the small numbers standard. Specifically, the Magistrate assumed that FWS's reference to 7.5% of take represented the annual historical take of 68 bears divided by the Southern Beaufort Sea (SBS) population of 900 bears. But the ITR indicates FWS was estimating the total proportion of the SBS taken over the five years: FWS stated that 42% of the total SBS population was observed by industry during the prior five years, and 18% of those encounters resulted in takes; 18% of 42% is approximately 7.5%. *See* BSITR0013791.[3]

---

[3] The equation for this calculation is as follows: 0.42 x 0.18 = 0.0756; 0.0756 = 7.56%.

Regarding the 2013–2018 Chukchi Sea ITR for the take of polar bears, while FWS discussed annual take in its findings, FWS explained that it relied on total five-year take when making the small numbers findings. 78 Fed. Reg. 35,364, 35,415 (June 12, 2013) (noting annual take in making its finding but responding to a comment questioning its small numbers finding by explaining the "determination that 125 bears (25 bears annually) constitutes a small number within the meaning of the MMPA is based on the fact that 125 polar bears is small" relative to the affected population). While it is true that the 2008-2013 Chukchi Sea ITR made a qualitive, not a quantitative finding, the Magistrate failed to account for FWS's statement that it was relying on total take in doing so. 73 Fed. Reg. 33,212 (June 11, 2008) (finding "the total expected takings of ... polar bears during Industry exploration activities will impact small numbers of animals ....").

In sum, the Magistrate failed to account for or reconcile FWS's express statements in these ITRs that it was using total five-year take for its small numbers findings, and that doing so was required by the MMPA.[4] As a result, the Magistrate erred in finding that FWS did not reverse its policy in this ITR. At a minimum, FWS's approach is inconsistent, disqualifying its interpretation from receiving deference. *Nat'l Res. Def. Council v. U.S. EPA*, 526 F.3d 591, 605 (9th Cir. 2008). The Magistrate erred, therefore, in affording FWS *Chevron* deference for its interpretation. R&R at 14–15, 19.

---

[4] The Magistrate faulted AWA for not citing the 2011-2016 Beaufort Sea ITR, but AWA discussed it in both of its briefs. Pls. Opening Br. for Summ. J. at 28 n. 94, ECF No. 31 [hereinafter AWA Opening Br.]; AWA Reply at 17.

*Alaska Wildlife Alliance v. U.S. Fish and Wildlife Service*
Case No. 3:21-cv-00209-SLG-KFR                                                                 Page 7

Case 3:21-cv-00209-SLG-KFR   Document 57   Filed 02/21/23   Page 9 of 20

II. **THE MAGISTRATE ERRED IN FINDING FWS'S CATEGORIZATION OF LEVEL A TAKE WAS CONSISTENT WITH THE MMPA.**

The Magistrate's finding that FWS properly divided Level A harassment into newly created "non-serious" and "serious" categories for purposes of assessing the likelihood of take is erroneous because it is contrary to the plain language of the MMPA. R&R at 20–23. FWS's sub-categories unreasonably conceal the high probability of Level A harassment occurring and led FWS to avoid considering the impacts of Level A take on the population. AWA Reply at 19–20.

To reach his incorrect conclusion, the Magistrate conflated FWS's obligation to make a negligible impact determination with its obligation to assess and authorize take in a non-arbitrary manner. The MMPA only allows FWS to authorize incidental take if several separate requirements are met, including that: the total take would only have a negligible impact and FWS prescribes "permissible methods of taking," 16 U.S.C. § 1371(a)(5)(A)(i)(I). As this Court explained, the MMPA's plain language makes clear that the negligible impact determination is a separate requirement from prescribing permissible take. *Cook Inletkeeper v. Raimondo*, 533 F. Supp. 3d 739, 757 (D. Alaska 2021); *cf.* R&R at 21-23 (deferring to FWS's "serious" and "non-serious" Level A harassment categories as reasonable to assess impact on annual rates of survival).

Even if FWS could justify subdividing Level A harassment to assess whether the impact of each subcategory on the population is negligible, FWS cannot bifurcate Level A harassment in determining whether Level A harassment is likely to occur. To support

―――――――――――
*Alaska Wildlife Alliance v. U.S. Fish and Wildlife Service*
Case No. 3:21-cv-00209-SLG-KFR                                                                 Page 8

Case 3:21-cv-00209-SLG-KFR   Document 57   Filed 02/21/23   Page 10 of 20

reaching the opposite conclusion, the Magistrate incorrectly determined that the MMPA's clear language is ambiguous. *Cf. Chemehuevi Indian Tribe v. Newsom*, 919 F.3d 1148, 1152-53 (9th Cir. 2019) (Courts must interpret a statute based on its plain language). The MMPA defines "harassment," in part, as "any act of pursuit, torment, or annoyance which has the potential to injure a marine mammal" (Level A harassment). 16 U.S.C. § 1362(18)(A). The statute is clear that any act with the potential to cause injury constitutes Level A harassment.[5] Because both subcategories meet the definition of Level A harassment, the plain language of the MMPA required FWS to consider them together when determining the likelihood of Level A take.

The Magistrate also erred in finding FWS's interpretation reasonable and affording it deference. R&R at 21–23. Defendants do not dispute that both serious and non-serious Level A harassment are acts that potentially cause "injury" and qualify as Level A harassment. BSITR0002414; Feds.' Br. at 25. Nor do they dispute that FWS's model demonstrated a 75% probability of at least one Level A harassment/lethal take occurring, or that FWS failed to consider this probability in determining whether Level A harassment was likely to occur. BSITR0002414; Feds.' Br. at 26. The Magistrate incorrectly upheld FWS's use of newly invented subcategories for purposes of estimating take, allowing FWS to artificially reduce the likelihood of take from those subcategories

---

[5] Congress's use of "serious injury" in other parts of the statute supports this argument. AWA Reply at 14. The Magistrate reached the opposite conclusion regarding this well-established canon of construction without justification. R&R at 22.

deemed irrelevant for purposes of its negligible impacts determination when making its Level A take finding. R&R at 22–23. This is incorrect as a matter of law.

III. **THE MAGISTRATE ERRED IN CONSIDERING FWS'S FINDINGS REGARDING REASONABLY LIKELY SERIOUS LEVEL A/LETHAL TAKE OF CUBS.**

AWA objects to the portion of the R&R concluding FWS adequately considered Level A harassment of cubs. R&R at 25–31. In upholding FWS's interpretation that "reasonably likely" means "more likely than not," the Magistrate relies on an on-line law dictionary to ignore cases cited by AWA where courts explained that "reasonably likely" is a lesser probability than "more likely than not." R&R at 26; AWA Opening Br. at 34, 34 n.118; AWA Reply at 31. Notably, the documents cited by the on-line dictionary are not helpful to show how "reasonably likely" is understood in the United States legal system or otherwise justify disregarding U.S. Supreme Court and appellate court decisions explaining the phrase. R&R at 26 n.149 (link last accessed Feb. 21, 2023) (attached as Ex. 1) (indicating definitions each "Based on 1 documents" [sic]); Ex. 2, Ex. 3 ("samples" cited by on-line dictionary to support definitions of "reasonably likely" used in R&R, consisting of private contract and document examining Canadian law). The Magistrate also ignored that same on-line dictionary's additional definitions that are consistent with the cases AWA cited. *See*, *e.g.*, Ex. 1 ("Reasonably likely means more than merely possible but less than 'more probable than not.'") (citing *Alvarez v. Superior Court*, 154 Cal. App. 4th 642, 653 (2007)). The Magistrate also relies on Endangered Species Act (ESA) cases cited by FWS that interpret the term "likely" — not the phrase

"reasonably likely" — and ignores AWA's arguments that equating "reasonably likely" with "likely" reads the term "reasonably" out of the regulation. R&R at 26–27; AWA Reply at 31–32. Furthermore, the Magistrate's conclusion that it was permissible to disregard a 46% annual probability of serious Level A cub take as not "reasonably likely" because FWS relied on the median instead of the mean number of take in the model output, R&R at 27–28, ignored AWA's explanation that the 46% probability of at least one such take was not based on using the mean instead of the median. AWA Reply at 25–27; AWA Opening Br. at 34 n.117. It also ignored AWA's explanation that this probability was true regardless of the median, which FWS did not dispute. AWA Reply at 25–27.

In dismissing AWA's argument that FWS improperly dismissed the 94% or greater probability that at least one serious Level A cub take would occur over the five-year ITR period, R&R at 28–29, the Magistrate relies on post hoc arguments unsupported by the record. AWA Reply at 28–29. The Magistrate also failed to address AWA's arguments explaining why neither the one-year LOA mechanism nor the direction to evaluate impacts on annual recruitment rationally justified FWS ignoring the 94% or greater probability of take occurring in at least one year of the five-year ITR period. R&R at 28–29; AWA Reply at 29–30.

The Magistrate also relied on assertions that documentation of Level A take has been historically rare to uphold FWS's conclusion that such take was not reasonably likely in the future. R&R at 28–29. This ignores record evidence that FWS's assertions pertained to "surface" rather than denning bears; that FWS conceded that take of denning

bears would be unobserved and therefore not documented, resulting in underestimation; and that the modeling of impacts to denning bears, not past observations, is the best available science and the basis for the ITR findings. AWA Reply at 23–25.

Further, the Magistrate erred in ruling that FWS properly ignored potential survival-impairing impacts to cubs from early den departure in its negligible impact determination. R&R at 31–32. AWA's briefs and FWS's record demonstrate that early emergence from the den site may negatively influence the survival rates of cubs. AWA Opening Br. at 39; AWA Reply at 33–34; BSITR0002394 (citing BSITR0005017–19, BSITR0005050 (scientific studies regarding early den departure)); *see also* BSITR0016648 (citing BSITR0003612–19 (same)). FWS refused to consider that potential cub mortality in its negligible impact determination on the basis that the agency lacked a study to quantify the likelihood of death. BSITR0002394; BSITR0002438. This violates the MMPA and the APA. *Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1025–28 (9th Cir. 2011) (uncertainty in magnitude of negative effect does not permit agency to ignore it). Neither the Magistrate nor FWS explained why the agency could permissibly disregard these studies nor did the Magistrate assess whether the record supports FWS's contemporaneous explanation for its decision. Instead, the Magistrate deferred to FWS's post hoc rationale and overall negligible impact determination — which does not address or discuss impacts from early den emergence, BSITR0002423–24 — to hold that FWS based its decision on the "best scientific evidence available." R&R

at 32 (citing 54 Fed. Reg. at 40,343; 50 C.F.R. § 18.27(b)). The Magistrate failed to assess whether FWS's decision has a rational basis and therefore is in error.

IV. **FWS CANNOT LAWFULLY AUTHORIZE TAKE FROM ACTIVITIES CAUSING OTHER UNAUTHORIZED TAKE.**

AWA objects to the portion of the R&R concluding that FWS did not violate the MMPA in authorizing Level B harassment by activities highly likely to cause Level A take. R&R at 32–34. The Magistrate failed to address AWA's arguments that the amendment of the MMPA did not abrogate the duties that bar FWS from authorizing take under such circumstances, and that the applicant's choice not to apply for Level A take authorization is not controlling. AWA Reply at 35–37. The Magistrate also failed to address that even if FWS could consider only the annual probability of take for each year in isolation in making the negligible impact determination, it does not follow that FWS may ignore the 94% probability that the activities covered under the ITR would cause Level A take in at least one of the five years. AWA Reply at 36–37.

V. **THE MAGISTRATE ERRED IN FINDING THAT FWS LAWFULLY ANALYZED TIMING AND GEOGRAPHIC RESTRICTIONS.**

The Magistrate erred in finding that FWS ensured the least practicable adverse impact (LPAI) to polar bears under the MMPA by relying on FWS's post hoc reasoning and misconstruing AWA's arguments. R&R at 34–39. The Magistrate determined it would be impracticable to locate and require a buffer around suitable denning habitat prior to yearly operations because such habitat changes and the ITR covers a large area with existing operations. R&R at 37. This repeats Defendant's post hoc arguments and

conflicts with the ITR's requirement that operators locate suitable denning habitat prior to operations. *See* BSITR0002384, BSITR0002455. The Magistrate also misconstrued AWA's argument. Maintaining access to existing facilities does not preclude placing a buffer around suitable denning habitat for new activities such as seismic exploration. *See* AWA Opening Br. at 46–47; AWA Reply at 39. Moreover, the conclusion that FWS need not protect areas where "denning activity is unlikely," is puzzling. R&R at 37. AWA proposed protecting suitable denning habitat, i.e., areas where FWS deems denning activity to be likely. *See* BSITR0002455–56 (requiring surveys of "all denning habitat").

The Magistrate's conclusions that FWS properly dismissed mitigation measures considered practicable within the Arctic National Wildlife Refuge because the ITR involves "unknown activities in unknown years across a large area with existing infrastructure and facilities" and that FWS lacks authority to close sensitive areas similarly rely on post hoc reasoning and should be rejected. R&R at 37. Yet, the ITR gave one reason for dismissing timing and geographic mitigation measures — industry said they were impracticable. BSITR0002424. The Magistrate failed to acknowledge that "parroting" the Alaska Oil and Gas Association's (AOGA) unexplained assertion violates the MMPA. *See* AWA Opening Br. at 45–46 (citing *Conservation Council for Haw.*, 97 F. Supp. 3d at 1230).

Lastly, the Magistrate's conclusion that repeating measures from prior ITRs satisfies the MMPA and that AWA did "not articulate" why such measures are insufficient should be rejected. R&R at 38. AWA explained, and FWS acknowledged,

that the ITR's den detection and avoidance measures lack efficacy and may lead to lethal take. *See* AWA Opening Br. 13 nn.15–18, 15–16 nn.32–40; *see also* BSITR00016629 (FWS discussing the limited efficacy of den detection and avoidance). Moreover, this misconstrues the MMPA's "stringent" requirement that FWS mitigate impacts to polar bears to the greatest extent practicable. *Evans*, 364 F. Supp. 2d at 1111. FWS cannot meet this standard by reiterating past measures without analysis and deferring mitigation to future LOAs. R&R at 37–38. FWS must ensure the LPAI to polar bears now, and nothing in *Alaska Wilderness League v. Jewell*, 116 F. Supp. 3d 958 (D. Alaska July 2, 2015) alters this statutory duty. *See* AWA Reply at 41.

The Court should also reject the Magistrate's National Environmental Policy Act (NEPA) alternatives analysis because it appears to presume an Environmental Assessment (EA) with two alternatives satisfies NEPA. R&R at 41 (citing *Salazar*, 695 F.3d at 915–16). The relevant question is not how many alternatives FWS analyzed but whether it considered all reasonable alternatives and adequately explained why alternatives imposing timing and geographic restrictions were excluded from analysis. *See Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, 234 F. App'x 440, 443 (9th Cir. 2007). As explained above, FWS failed to meet this obligation by rejecting all such alternatives based on AOGA's unsupported conclusion. *See also id.* ("A cursory dismissal of a proposed alternative, unsupported by agency analysis, does not help an agency satisfy its NEPA duty."). In reaching the opposite conclusion, the Magistrate improperly focused on FWS's reasons for rejecting other alternatives that AWA did not raise in comments or

briefing, and assumed without support that geographic and timing restrictions would be inconsistent with the ITR's purpose. R&R at 42–43. The Magistrate's reliance on *Salazar* is misplaced, as the agency in that case considered alternatives suggested by the plaintiffs and reasonably explained why they were not feasible. *Id.*; *Salazar*, 695 F.3d at 916. The Magistrate erred in absolving FWS of the duty to provide a reasonable, non-cursory explanation for rejecting an entire category of alternatives the agency previously considered practicable and effective.

## VI. FWS VIOLATED THE ENDANGERED SPECIES ACT.

The Magistrate incorrectly rejected AWA's claim that the incidental take statement for the ITR failed to account for reasonably certain Level A harassment/lethal take. R&R at 45. As explained in detail in AWA's briefing and discussed above, FWS's finding that no Level A harassment/lethal take is reasonably likely to occur under the ITR is arbitrary and capricious. Accordingly, the Court should hold that FWS's failure to account for such take violated the ESA.

## CONCLUSION

The Court should reject the Magistrate's R&R in its entirety. The Court should grant Plaintiffs' Motion for Summary Judgment, and vacate the ITR, all LOAs issued under it, and the EA, Finding of No Significant Impact, and Biological Opinion. The Court should also, accordingly, deny Defendants' motions.

Respectfully submitted this 21st day of February 2023.

<pre>
                                        s/ Bridget Psarianos
                                        Bridget Psarianos (AK Bar No. 1705025)
                                        Brook Brisson (AK Bar No. 0905013)
                                        Joanna Cahoon (AK Bar No. 1405034)
                                        TRUSTEES FOR ALASKA
                                        121 W Fireweed Lane, Suite 105
                                        Anchorage, AK 99503
                                        Phone: (907) 276-4244
                                        Fax: (907) 276-7110
                                        bpsarianos@trustees.org
                                        bbrisson@trustees.org
                                        jcahoon@trustees.org

                                        *Attorneys for Plaintiffs
                                        Alaska Wildlife Alliance, Alaska Wilderness
                                        League, Defenders of Wildlife, Environment
                                        America, and Sierra Club*

                                        s/ Karimah Schoenhut (consent)
                                        Karimah Schoenhut (pro hac vice)
                                        SIERRA CLUB ENVIRONMENTAL LAW PROGRAM
                                        50 F St., NW 8th Floor
                                        Washington, DC 20001
                                        Phone: (202) 548-4584
                                        Fax: (202) 547-6009
                                        karimah.schoenhut@sierraclub.org

                                        *Attorney for Plaintiff Sierra Club*

                                        s/ Kristen Monsell (consent)
                                        Kristen Monsell (pro hac vice)
                                        CENTER FOR BIOLOGICAL DIVERSITY
                                        1212 Broadway, Suite 800
                                        Oakland, CA 94612
                                        Phone: (510) 844-7137
                                        Fax: (510) 844-7150
                                        kmonsell@biologicaldiversity.org

                                        *Attorney for Plaintiffs Center for Biological
                                        Diversity and Friends of the Earth*
</pre>

# CERTIFICATE OF SERVICE

I certify that on February 21, 2023, I caused a copy of the PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS to be electronically filed with the Clerk of the Court for the U.S. District Court of Alaska using the CM/ECF system.

                                              s/ Bridget Psarianos
                                              Bridget Psarianos

*Alaska Wildlife Alliance v. U.S. Fish and Wildlife Service*
Case No. 3:21-cv-00209-SLG-KFR                                                        Page 18

Case 3:21-cv-00209-SLG-KFR   Document 57   Filed 02/21/23   Page 20 of 20